UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOHN AND JENA MCKINLEY,

                    Plaintiffs,

        v.                                                    **DECISION AND ORDER**
                                                              19-CV-1289S
EVEREST RECEIVABLE SERVICES, INC.,
et al.
                    Defendants.


## I.        Introduction

        In this Fair Debt Collection Practices Act[1] case, Plaintiffs sued for two alleged debt
collection calls made by Defendant Everest Receivable Services, Inc. ("Everest" or
"Defendant")[2].  Defendant's representatives twice called Lois McKinley, John's mother,
purportedly to confirm John's current address.

        Before this Court is both sides' respective Motions for Summary Judgment (Docket
Nos. 15 (Defendant Everest), 16 (Plaintiffs)).  Defendant Everest (Docket No. 15) seeks
judgment in its favor on judicial estoppel grounds and dismissal of Plaintiffs John and
Jena McKinley's FDCPA claims on their merits.  Plaintiffs move for summary judgment
(Docket No. 16) granting their FDCPA claims.

        For the reasons stated below, Everest's Motion for Summary Judgment (Docket
No. 15) is denied on the grounds of judicial estoppel but granted to dismiss Jena
McKinley's FDCPA claims on standing grounds and John McKinley's claims on their

---

[1]15 U.S.C. ch. 41, subch. V, §§ 1692 to 1692p ("FDCPA" or the "Act").

[2]Defendant also referred to itself as "Everest Receivable, Inc." in the Answer, Docket No. 4, and its
moving papers, Docket No. 15.

merits.  Plaintiffs' opposing Motion for Summary Judgment (Docket No. 16) is denied. Their Motion for leave to amend the Complaint sought in their response (Docket No. 21, Pls. Reply Memo. at 8-9) is granted.  This case is dismissed.

## II.    Background

Plaintiffs John McKinley ("John") and Jena McKinley ("Jena") generally admit the facts alleged by Everest in its Motion for Summary Judgment (Docket No. 20, Pls. Responding Statement; cf. Docket No. 15, Def. Statement) and vice versa (Docket No. 19, Def. Responding Statement; cf. Docket No. 16, Pl. Statement).  This Court will cite to the accepted facts, involving Plaintiffs' filing for bankruptcy and Everest's contacts alleged in Plaintiffs' FDCPA action.  Where pertinent, this Court also will note disputed facts.

### A.  John McKinley's Debt and Plaintiffs' Bankruptcy Filing

Plaintiffs reside in Rosemount, Minnesota (Docket No. 1, Compl. ¶ 3; Docket No. 16, Pls. Statement ¶ 9; Docket No. 16, John McKinley Decl. ¶ 4; id., Jena McKinley Decl. ¶ 4).  Defendant Everest is a New York debt collector (Docket No. 1, Compl. ¶ 4; Docket No. 16, Pls. Statement ¶ 1).

On or about July 22, 2017, John incurred a debt with Republic Bank, owing the bank $695.80 (Docket No. 15, Def. Statement ¶¶ 33-35).

On January 28, 2019, Plaintiffs filed for bankruptcy in the United States Bankruptcy Court for the District of Minnesota, In re McKinley, No. 19-30258 (Docket No. 15, Def. Statement ¶ 1; id., Def. Atty. Decl. ¶ 3, Exs. A (bankruptcy Petition), B (docket); see Docket No. 19, Def. Response Statement ¶ 10).  They listed John's debt with Republic Bank in the bankruptcy Petition (Docket No. 15, Def. Statement ¶ 37).  In March 2019,

the McKinleys modified their Chapter 13 plan (Docket No. 15, Def. Statement ¶ 2), In re McKinley, No. 19-30258 (Docket No. 18) (Bankr. D. Minn.).   On April 25, 2019, the Bankruptcy Court confirmed the modified Chapter 13 plan (Docket No. 15, Def. Statement ¶ 3).

> B.  Plaintiffs' Fair Debt Collection Practices Claim—Calls to John's Mother

Meanwhile, Republic Bank placed John's debt with Everest for servicing on or about May 3, 2019 (Docket No. 19, Def. Responding Statement ¶ 17).  The parties agree that Everest never attempted to collect a debt owed by Jena (Docket No. 15, Def. Statement ¶¶ 9, 46; see Docket No. 20, Pls. Responding Statement ¶¶ 9, 46).  Only John owed the Republic Bank debt and Everest never called John about that debt (Docket No. 15, Def. Statement ¶¶ 41, 44).

On May 28, 2019, an Everest's representative named Leeanne called Lois McKinley, John's mother[3], and asked for John's address (Docket No. 16, Pls. Statement ¶¶ 2-3; Docket No. 18, Pls. Atty. Decl. Ex. D).  Lois McKinley's call from Leeanne went as follows (Docket No. 16, Pls. Statement ¶ 3; Docket No. 16, Pls. Atty. Decl. ¶ 6, Ex. D (audio recording of call); see also Docket No. 19, Def. Responding Statement ¶ 3):

> Everest: Hello?
>
> Lois: Hello?
>
> Everest: Hi, good afternoon, my name is Leeanne. I have to state my call is recorded. I was trying to confirm location information for John McKinley.
>
> Lois: I don't know.

---

[3]The Complaint alleges that Everest called Jena's mother, Docket No. 1, Compl. ¶ 12, and this parent is referred to as "Plaintiff's mother" in the rest of the Complaint, id. ¶¶ 13-17.

Everest later argues that it was John's mother that it intended to contact, Docket No. 15, Def. Memo. at 1 & n.1; Docket No. 15, Def. Statement ¶ 10; Docket No. 20, Pls. Responding Statement ¶ 10 (not disputing Defendant's ¶ 10); see also Docket No. 16, Pls. Memo. at 2.

Everest: Do you know who that is by any chance ma'am? … ma'am?

Lois: What do you need to know for?

Everest: Uh, we just have a letter we are trying to mail out, I didn't know if this was a number I could leave a message with or…

Lois: No, no, no.

Everest: You don't speak with him at all? …. Ugh I have a headache.

[call ends].

Everest claims its representative called Lois merely to confirm John's location (Docket No. 15, Def. Statement ¶ 11).

Plaintiffs counter that Everest here attempted to leave a message with Lois. They argue that although Everest already had John's correct mailing address when Leeanne called. (Docket No. 20, Pls. Responding Statement ¶ 11.)

On June 24, 2019, another Everest representative, Chris Guth, called Lois McKinley to confirm John's address (Docket No. 16, Pls. Statement ¶ 4; <u>see also</u> Docket No. 19, Def. Responding Statement ¶ 4; Docket No. 16, Pls. Atty. Decl. ¶ 7, Ex. E (recording of call)). This call went as follows:

Everest: Good afternoon my name is Chris Guth, the call is recorded. I am calling to confirm location information for John McKinley.

Lois: I don't have any information for you.

Everest: Oh.

Lois: Not his address or phone number or anything.

Everest: Oh, okay, I mean, I have an address here that I was just trying confirm; do you, are you familiar with this person sir, I mean ma'am?

Lois: What do you need to know for?

Everest: My office has a required document being sent out to her . . . um, this person,  I'm sorry. [clears throat] My office has a required document going out to John, and we were just trying to confirm we had the right mailing address for him.

Lois: Well it's not this one.

Everest: Oh okay.

Lois: There's no John here, so…

Everest: No, no, no. We were trying to confirm if 16724 Garland Way West in Rosemount, Minnesota was a good address for him.

[call ends].

Everest denies attempting to collect John's debt when it contacted Lois (Docket No. 19, Def. Responding Statement ¶ 6).  Everest called Lois only to confirm John's address (id. ¶¶ 2, 6).

Plaintiffs claim that Everest already had confirmed McKinleys' address before calling Lois McKinley (Docket No. 16, Pls. Statement ¶ 7).

Everest argues that there is no evidence that it had prior confirmation of that address before calling Lois McKinley and it only confirmed the address when Jena called Everest (Docket No. 19, Def. Responding Statement ¶¶ 7, 9).  Everest produced its Chief Compliance Officer, David Maczka, who stated that Jena's June 24, 2019, conversation confirmed John's mailing address for Everest (Docket No. 22, Maczka Decl. ¶¶ 5-6).

C.  Lois McKinley Calls Jena

After Guth's June 24th call, Lois McKinley called Jena reporting Everest's calls and relaying Everest's telephone number to Jena (Docket No. 16, Pls. Statement ¶ 5; but cf. Docket No. 19, Def. Responding Statement ¶ 5 (Everest did not admit or deny this fact)). Later that day Jena called that number, learned that the caller was from Everest and that

Everest was attempting to collect a debt allegedly owed by John (Docket No. 16, Pls. Statement ¶ 6).

The parties also dispute whether Jena suffered from anxiety due to the two telephone calls to Lois, Lois' conversation with Jena, and Jena's follow up call with Everest (compare Docket No. 15, Def. Statement ¶ 50 with Docket No. 20, Pls. Responding Statement ¶ 50).  She claims that it was "bothersome" and "not called for" for Everest to call and then for Lois to ask Jena detailed questions about her family finances. Jena also felt embarrassed and frustrated by Everest's conversations with Lois.  (Docket No. 20, Pls. Responding Statement ¶ 51.)  Jena later testified that she suffered humiliation from Lois knowing that a debt collector was attempting to collect a debt from the McKinleys (Docket No. 15, Def. Statement ¶ 52).

Everest denied that Jena suffered any actual damage from the calls to Lois (Docket No. 15, Def. Statement ¶ 51).

    D.  Proceedings in this Case

Plaintiffs filed their Complaint here, on September 20, 2019 (Docket No. 1). There, they allege several violations of the FDCPA (id.).  First, they claim that Everest violated 15 U.S.C. § 1692b(1) that Everest contacted third parties for purposes other than to confirm or correct location information (id. ¶ 23).  Second, Plaintiffs allege that Everest violated § 1692d by engaging in behavior the natural consequences of which was harassment, oppression, or abuse in connection with collection of a debt (id. ¶ 24). Third, Plaintiffs claim that Everest violated § 1692e for its use of false, deceptive, or misleading representation or means in connection with the collection of a debt (id. ¶ 25). Fourth, they assert that Everest also violated § 1692e(10) that Everest used false and

deceptive means to collect a debt (id. ¶ 26).  Fifth, Plaintiffs allege that Everest violated

§ 1692f that Everest used unfair and unconscionable means to collect a debt (id. ¶ 27).

Plaintiffs seek statutory damages of $1,000, pursuant to 15 U.S.C. § 1692k(a)(2)(A) (id.,

WHEREFORE Cl. ¶ 2), recovery of their costs including attorneys' fees (id., ¶ 3), and

punitive damages (id. ¶ 4).

Plaintiffs did not allege violation of 15 U.S.C. § 1692c for a debt collector

contacting anyone other than the consumer in connection with debt collection.

Everest answered the Complaint (Docket No. 4).  To date, there is no

identification or appearances by John Doe Defendants 1-10, the individual collectors

employed by Everest (Docket No. 1, Compl. ¶¶ 5, 6).

E.  Bankruptcy Proceedings

Meanwhile, Plaintiffs modified their Chapter 13 plan on November 24, 2019

(Docket No. 15, Def. Statement ¶ 4), In re McKinley, No. 19-30258 (Docket No. 32)

(Bankr. D. Minn.).  Everest claims that they did not mention this action in their bankruptcy

schedules (Docket No. 15, Def. Statement ¶¶ 6, 7; Docket No. 19, Def. Responding

Statement ¶ 15).  Plaintiffs disagree, claiming that they amended their schedules on

November 9, 2020, disclosing this lawsuit (Docket No. 20, Pls. Responding Statement

¶ 7; Docket No. 20, Pls. Atty. Decl. ¶ 3, Ex. A, at page 8 of 10, paragraph 33), In re

McKinley, No. 19-30258 (Docket No. 54) (Bankr. D. Minn.).  That amendment occurred

after Everest filed its Motion for Summary Judgment (Docket No. 15, filed Oct. 8, 2020).

Everest now replies that Plaintiffs amended in response to the Summary Judgment

Motion and not due to a good faith effort to remedy an inadvertent mistake (Docket No. 22,

Def. Reply Memo. at 3-4).

On December 28, 2019, the Bankruptcy Court confirmed the modified post-confirmation Chapter 13 plan (Docket No. 15, Def. Statement ¶ 5; but cf. Docket No. 15, Def. Memo. at 7 (stating proceeding was held in 2020)), In re McKinley, No. 19-30258 (minutes of Dec. 26, 2019, proceeding confirming plan). Plaintiffs report that, as of filing their moving papers, the Chapter 13 bankruptcy remains open (Docket No. 20, Pls. Memo. at 5; Docket No. 15, Def. Atty. Decl. ¶ 3, Ex. B (Bankruptcy Court docket, last entry Sept. 18, 2020)). This Court also takes judicial notice, see Fed. R. Evid. 201(b)(2), (c), from the published docket for the Bankruptcy Court on PACER that Plaintiffs' Chapter 13 proceedings remains open, and the last docket entry was in December 2021, In re McKinley, No. 19-30258 (Docket No. 67, modified post-confirmation Ch. 13 Plan, Dec. 7, 2021) (Bankr. D. Minn.).

F. Motions for Summary Judgment (Docket Nos. 15, 16)

Following referral to Magistrate Judge Schroeder (Docket No. 7) and issuance of Case Management Order (Docket No. 10), on October 8 and 9, 2020, the parties respectively moved for summary judgment (Docket Nos. 15[4], 16[5]). Responses to both Motions were due by November 10, 2020, and replies by November 24, 2020 (Docket

---

[4]In support of Everest's Motion, it submitted its Statement of Facts; its attorney's Declaration with exhibits; the Declaration of David Maczka, chief compliance officer of Everest; and its Memorandum of Law, Docket No. 15.

In addition to their Motion for Summary Judgment, Docket No. 16, Plaintiffs opposed Everest's Motion with their attorney's Declaration; Response to Everest's Statement of Fact ("Pls. Responding Statement"); and Plaintiff's Memorandum in Opposition, Docket No. 20.

Everest replied, Docket No. 22.

[5]In support of their Motion, Docket No. 16, Plaintiffs submitted their Statement of Facts; the Declarations of John McKinley and Jena McKinley; their counsel's Declaration with exhibits, Docket Nos. 16, 18 (Exhibits D and E, audio recordings of calls), and Memorandum of Law, Docket No. 16.

In addition to the opposition stated in Everest's Motion, Docket No. 15, Everest submitted an opposing Memorandum of Law and Defendant's Response to Plaintiffs' Statement of Fact ("Def. Responding Statement") to Plaintiffs' motion, Docket No. 19.

Plaintiffs replied with their Reply Memorandum, Docket No. 21.

No. 17).   Following the parties' timely responses and replies, this Court deems the Motions submitted without oral argument.

### III.   Discussion

A.  Applicable Standards—Summary Judgment

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," id.  The movant seeking summary judgment has the burden (through pleadings, depositions, answers to interrogatories, admissions, affidavits, and other materials, Fed. R. Civ. P. 56(c)(1)) to demonstrate the absence of a genuine issue of material fact, Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion," Addicks v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper," Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The function of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue of fact for trial," Anderson, supra, 477 U.S. at 249.  "Assessment of credibility and choices between conflicting versions of

9

the events are matters for the jury, not for the court on summary judgment," <u>Rule v. Brine,</u> <u>Inc.</u>, 85 F.3d 1002, 1011 (2d Cir. 1996).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment, <u>Anderson</u>, <u>supra</u>, 477 U.S. at 252.  A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful," <u>Matsushita Elec.</u> <u>Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  That is, there must be evidence from which the jury could reasonably find for the nonmoving party, <u>Anderson</u>, <u>supra</u>, 477 U.S. at 252.

This Court's Local Civil Rules require that movant submit "a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried," W.D.N.Y. Loc. Civ. R. 56(a)(1), and the opponent to submit a response to each numbered paragraph in the movant's statement, <u>id.</u> R. 56(a)(2).  Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the opponent's statement, <u>id.</u>

This Court next considers Defendant's Motion for Summary Judgment (Docket No. 15) and the applicability of judicial estoppel to Plaintiffs' claims and Jena's standing under the FDCPA.  If necessary, this Court then considers Plaintiffs' Motion for Summary Judgment (Docket No. 16).

B.  Defendant Everest's Motion (Docket No. 15)

1.  Applicable Standards

a.  Judicial Estoppel from Bankruptcy

A Chapter 13 debtor's failure to disclose his or her claims in bankruptcy may lead to judicial estoppel from later raising those claims in this Court (see Docket No. 15, Def. Memo. at 5-9).  This Court recently observed that judicial estoppel is a common law doctrine that a party asserting one position (such as not listing claims in Bankruptcy Court) cannot assert later the contrary position in this Court (by alleging the unlisted claims), Black v. Buffalo Meat Serv., Inc., No. 15CV49, 2021 WL 2043006, at *17 (W.D.N.Y. May 21, 2021) (Skretny, J.).  It "is an equitable doctrine invoked at the court's discretion. New Hampshire v. Maine, 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). It is designed to 'prevent "improper use of judicial machinery."' Id. (citation omitted)." Coppedge v. Suntrust Banks, Inc., No. 3:08-CV-23(HL), 2009 WL 111639, at *2 (M.D. Ga. Jan. 14, 2009); Black, supra, 2021 WL 2043006, at *9.

The purposes of estoppel are to prevent internal inconsistency, to preclude litigants from playing "fast and loose" with the courts, and to avoid deliberate changing of positions for exigencies of the moment, Browning Mfg. v. Mims (In re Coastal Plains, Inc.), 179 F.3d 197, 206 (5th Cir. 1999).  Judicial estoppel is not to protect the litigants or creditors, but it is to protect the integrity of the judicial system, id. at 210; Black, supra, 2021 WL 2043006, at *9.  The purpose of this estoppel is to preserve the judicial process and not for the fairness to the parties, see Thomas v. FTS, USA, LLC, No. 3:13cv825, 2016 WL 3566657, at *14 (E.D. Va. June 24, 2016) (citation omitted); Black, supra, 2021 WL 2043006, at *17.

Regarding the equitable balance for judicial estoppel:

"On the other hand, courts have declined to impose this estoppel if there was an inadvertent failure to disclose from lack of knowledge of the facts for the claim or the lack of a motive to conceal the claim, In re Coastal Plains, Inc., supra, 179 F.3d at 210 & n.9 (citing cases).  Courts also recognized an exception to this estoppel due to a good faith mistake or unintentional error for not citing her civil claims in her bankruptcy filings, see Azuike v. BNY Mellon, 962 F. Supp. 2d 591, 599-600 (S.D.N.Y. 2013); Black, supra, 2018 WL 321324, at *8 (Docket No. 84).  Courts in the Second Circuit have ruled that "failure to disclose will only be deemed inadvertent or due to mistake when either the debtor has [1] no knowledge of the claims or [2] no motive to conceal the claims," Ibok v. Siac-Sector Inc., No. 05-CV-6584, 2011 WL 293757, at *7 (S.D.N.Y. Feb. 2, 2011) (quoting Coffaro v. Crespo, 721 F. Supp. 2d 141, 146 (E.D.N.Y. 2010)); Azuike, supra, 962 F. Supp. 2d at 599."

Black, supra, 2021 WL 2043006, at *9.

As another District Court observed, "Failure to list an accrued cause of action as an asset during bankruptcy proceedings can trigger judicial estoppel implications.  Upon filing of a bankruptcy petition, all assets of the debtor, including potential causes of action, become an asset of the bankruptcy estate," Harms v. Cigna Ins. Cos., 421 F. Supp. 2d 1225, 1228 (D.S.D. 2006); Black, supra, 2021 WL 2043006, at *9; see 11 U.S.C. § 541(a)(1) (property in a bankruptcy estate comprises "all legal or equitable interests of the debtor in property as of the commencement of the case"); id. § 1306(a) (property of Chapter 13 estate includes items listed in § 541) (see also Docket No. 15, Def. Memo. at 5).   Under § 1306, this estate also includes property acquired by the debtors after commencement of the case but before the case is closed, dismissed, or converted, 11 U.S.C. § 1306(a)(1).

To invoke judicial estoppel, a party must show

"that: (1) his adversary 'advanced an inconsistent factual position in a prior proceeding, and (2) the prior inconsistent position was adopted by the first court in some manner.'   AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet

Indus. Inc., 84 F.3d 622, 628 (2d Cir.1996).  '[T]here must be a true
inconsistency between the statements in the two proceedings. If the
statements can be reconciled there is no occasion to apply an estoppel.'
Simon v. Safelite Glass Corp., 128 F.3d 68, 72–73 (2d Cir.1997),"

Wight v. BankAmerica Corp., 219 F.3d 79, 90 (2d Cir. 2000) (Docket No. 15, Def.

Memo. at 6).

In a Chapters 7 or 11 bankruptcy, once a bankruptcy petition is filed, the debtors'

assets (including their causes of action) vest to the estate and the real party of interest

for those causes of action is the bankruptcy trustee, Grainger v. Meritan, Inc., No. 3:09-

CV-00271-CWR-FKB, 2011 WL 824484, at *5 (S.D. Miss. Mar. 2, 2011); Black, supra,

2021 WL 2043006, at *8, 4 (Chapter 7 petition); 11 U.S.C. §§ 521(d), 541(c)(1), 725.

A bankruptcy under Chapter 13 is different; there, the debtors retain possession of

all property of the estate except as provided in a confirmed plan, 11 U.S.C. §§ 1306(b),

1327(b); see id. § 1303 (Chapter 13 debtor has rights of trustee under sections 363(b),

(d), (e), (f), and (l)); H.R. Rep. No. 595, 95th Cong., 1st Sess. 430 (1977); Telfair v. First

Union Mortg. Corp., 216 F.3d 1333, 1339-40 (11th Cir. 2000).

"A voluntary petition, list, schedule, or statement may be amended by the debtor

as a matter of course at any time before the case is closed," Fed. R. Bankr. P. 1009(a).

Debtors may modify a Chapter 13 plan any time before the plan's confirmation and after,

11 U.S.C. §§ 1323(a), 1329.

### b.  Constitutional Standing and FDCPA

Everest argues that Jena lacks standing under the FDCPA (Docket No. 15, Def.

Memo. at 10-12).  For standing to assert claims under that Act, Plaintiffs must be the

consumer, stand in the consumer's shoes, or allege injurious exposure to collection

efforts, Bank v. Pentagroup Fin., LLC, No. 08-CV-5293, 2009 WL 1606420, at *3 (E.D.N.Y. June 9, 2009) (id. at 10).

Although not raised by Everest, this Court also must consider a threshold issue whether there is jurisdiction over Jena's claims pursuant to Article III and whether she has constitutional standing to assert her FDCPA claims, see Anderson Grp., LLC v. City of Saratoga Springs, 805 F.3d 34, 44 (2d Cir. 2015) (standing is "threshold matter" in determining District Court's jurisdiction to hear case); Cohen v. Rosicki, Rosicki & Assocs., P.C., 897 F.3d 75, 80 (2d Cir. 2018). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy," Spokeo, Inc. v. Robins , 578 U.S. 330, 338, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016). Article III standing requires Plaintiffs to demonstrate injury in fact, a "causal connection" between that injury and Defendant's conduct, and a likelihood "that the injury will be redressed by a favorable decision," Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotation marks omitted).

> "To allege an injury-in-fact, 'a plaintiff must claim the invasion of a concrete and particularized legally protected interest resulting in harm that is actual or imminent, not conjectural or hypothetical.' Strubel v. Comenity Bank, 842 F.3d 181, 188 (2d Cir. 2016) (internal quotation marks omitted). '[A] bare procedural violation, divorced from any concrete harm,' will not satisfy this standard. Spokeo, 136 S. Ct. at 1549. Nonetheless, 'an alleged procedural violation can [still] by itself manifest concrete injury where [ (1) ] Congress conferred the procedural right to protect a plaintiff's concrete interests and [ (2) ] where the procedural violation presents a risk of real harm to that concrete interest.' Strubel, 842 F.3d at 190."

Winehouse v. GC Servs. Ltd. P'ship, No. 16-cv-03110-FB-RML, 2017 WL 2455075, at *2 (E.D.N.Y. June 6, 2017). In Winehouse, the court denied a motion to dismiss under Rule 12(b)(1) for lack of standing because plaintiff Shifra Winehouse met "the bare minimum for constitutional standing," id. at *2, by alleging that the defendant did not tell

Winehouse the identity or purpose of defendant's message, "specific information whose disclosure the FDCPA mandates," id. at *2, 3.   The court concluded that she had constitutional standing as applied to the FDCPA, id. at *3.

Constitutional standing is the minimum for Plaintiffs to assert their claim.   The FDCPA "broadens the traditional 'injury in fact' analysis by expanding the range and scope of injuries creating constitutional standing," Ehrich v. I.C. Sys., Inc., 681 F. Supp.2d 265, 269 (E.D.N.Y. 2010); Kinkade v. Estate Info. Servs., LLC, No. CV 11-4787(AKT), 2012 WL 4511397, at *3 (E.D.N.Y. Sept. 28, 2012).   The Second Circuit has held that alleging violation of 15 U.S.C. § 1692e to protect an individual's concrete interest satisfies the injury-in-fact requirement of Article III, Cohen, supra, 897 F.3d at 81 (citing summary Order decisions).   Meanwhile courts within the Circuit have held that non-consumers who are harassed by debt collectors also have standing under § 1692d, see Bank, supra, 2009 WL 1606420, at *4, 5 (construing Act).

Plaintiffs have standing from suffering "injurious exposure to the debt collection attempt," Cunningham v. Channer, LLC, No. 17CV1305, 2018 WL 4620391, at *5 (W.D.N.Y. Sept. 26, 2018) (Geraci, C.J.) (cf. Docket No. 15, Def. Memo. at 11).

2.  Parties' Contentions

Given Plaintiffs' bankruptcy, Everest seeks application of judicial estoppel and dismissal of this Complaint because Plaintiffs failed to list this case and the claims therein in their bankruptcy estate (Docket No. 15, Def. Memo. at 5-10; see Docket No. 22, Def. Reply Memo. at 2-4; Docket No. 19, Def. Memo. at 4-6).   Everest contends Plaintiffs hid this lawsuit from the Bankruptcy Court and their creditors (Docket No. 15, Def. Memo. at 9-10).

Plaintiffs reject the application of judicial estoppel here because their Chapter 13 bankruptcy remains open and they amended their schedules to list this action (Docket No. 20, Pls. Memo. at 5-9, 9 n.2, citing <u>Maines v. Last Chance Funding, Inc.</u>, No. 2:17-cv-05453, 2018 WL 4558408, at *7 (E.D.N.Y. Sept. 21, 2018) (Chapter 13 petition)).  They argue that their testimony about the Republic Bank debt (<u>cf.</u> Docket No. 15, Def. Memo. at 9-10) was insufficient to establish their intention to mislead the Bankruptcy Court (providing grounds for estoppel) (Docket No. 20, Pls. Memo. at 8).  Everest fails to explain how Plaintiffs' testimony about that debt established their intention to deceive the Bankruptcy Court about this action, given that the FDCPA claims are not based on the validity of the Republic Bank debt (<u>id.</u>).

### 3.  Judicial Estoppel

In arguing that Plaintiffs should be judicially estopped from prosecuting this action, Everest does not consider that they filed a <u>Chapter 13</u> petition and are under a confirmed plan.  Unlike other chapters of the Bankruptcy Code, the debtors in Chapter 13 retain interest in their estate through the confirmation of a plan and beyond, 11 U.S.C. §§ 1303, 1327(b), ultimately until the case is closed, dismissed, or converted into a case under another chapter of the Bankruptcy Code, <u>see</u> <u>In re Kolenda</u>, 212 B.R. 851, 853 (W.D. Mich. 1997); <u>cf.</u> 11 U.S.C. § 1307.  A schedule may be amended by debtors at any time as a matter of course at any time before the case is closed, Fed. R. Bankr. P. 1009(a).

No one here has alleged that Plaintiffs' bankruptcy was closed, dismissed, or converted from Chapter 13 following confirmation of their plan or before they filed the amended schedules listing this action.  Plaintiffs argue that the bankruptcy remains open, and they amended the schedules to include the claim in this action (Docket No. 20, Pls.

Memo. at 5; Docket No. 20, Pls. Atty. Decl. ¶ 3, Ex. A).  Courts have allowed a Chapter 13 debtor to amend their schedule of assets to disclose post-confirmation acquisition of assets, see In re Waldron, 536 F.3d 1239, 1243-44 (11th Cir. 2008) (debtor ordered to amend schedules to list received settlement proceeds), as part of the debtor's "continuing duty to disclose changes in his financial situation during the pendency of his bankruptcy," id. at 1244.  Everest argues this continuing duty to disclose post-petition claims (Docket No. 15, Def. Memo. at 5) and Plaintiffs did so.  While courts note a debtor's continuing obligation to amend her schedule of assets and her duty to prepare schedules completely and accurately, e.g., Romeo v. FMA Alliance., Ltd., No. 15-cv-6524, 2016 WL 3647868, at *5 (E.D.N.Y. June 30, 2016) (citing cases); Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1286 (11th Cir. 2002) (debtor must amend "if circumstances change"), the Bankruptcy Code, Rules, and cases do not state when the debtor must update her schedule as circumstances change.

This Court declines to estop Plaintiffs here.  Their bankruptcy remained open (and, from this Court's review of the Bankruptcy Court's docket in the that case, remains open).  In this Chapter 13 proceeding, Plaintiffs still own the assets in the bankruptcy estate and possess the powers of a Bankruptcy Trustee for the estate.  Plaintiffs exercised their obligation to amend their schedules to include an undisclosed asset, the potential recovery in this case, see Fed. R. Bankr. P. 1009(a).  No one claims the confirmed plan vested Plaintiffs' estate with the Bankruptcy Trustee to deprive Plaintiffs of the right to continue to act as Chapter 13 debtors.

This Court finds that Plaintiffs fulfilled their duty to update the Bankruptcy Court (albeit belatedly) of their assets by filing the amended schedules listing this case as an

asset, see In re Waldron, supra, 536 F.3d at 1244-45; Ajaka v. BrooksAmerica Mortg. Corp., 453 F.3d 1339, 1344 (11th Cir. 2006).  Plaintiffs were not inconsistent in belatedly adding this claim in their schedules.  They can amend their schedule at any time before their bankruptcy is closed, Fed. R. Bankr. P. 1009(a); see Tignor v. Parkinson, 729 F.2d 977, 978 (4th Cir. 1984) (citing cases, former rule allowed for permissive amendment); Redmond v. Tuttle, 698 F.2d 414, 416-17, 417 n.6 (10th Cir. 1983).  This differs from Ajaka, where debtor Temidayo Ajaka failed to assert his Truth in Lending Act claim was an asset in the bankruptcy proceeding, 453 F.3d at 1344 (holding Ajaka assumed an inconsistent position); see also In re Watts, No. 09-35864, 2012 WL 3200820, at *5-6 (Bankr. S.D. Tex. Aug. 9, 2012) (debtors filed state suit and named Trustee as plaintiff without amending schedule or obtaining Trustee's approval).

The McKinleys here amended their schedules.  Ideally, they should have amended their schedules upon filing this action but there is no deadline for amending schedules.  With the bankruptcy still open and the confirmed plan in operation, Plaintiffs' belated filing is not inconsistent with omitting the claim and implying the absence of the claim.

Everest has not shown that the Bankruptcy Court relied upon Plaintiffs' position that they did not have this claim.  Everest has not produced the Plaintiffs' plan and has not shown the list of their assets subject to the plan.  Everest does not represent there was any reliance by the Bankruptcy Court on the absence of this claim as an asset.  The Bankruptcy Court modified the plan after its confirmation (as Everest acknowledges, Docket No. 15, Def. Statement ¶ 5) and remains subject to further modification until the case is closed.  That plan was modified as late as December 2021, In re McKinley, No. 19-30258 (Docket No. 67) (Bankr. D. Minn.).  Even if the amended scheduling is disregarded,

Everest still cannot establish that Plaintiffs misled the Bankruptcy Court about the pending action.

Everest's arguments for estoppel, that Plaintiffs somehow hid this lawsuit through Plaintiffs' failure to recall facts about the underlying Republic Bank debt (Docket No. 15, Def. Memo. at 9-10), is unavailing.  Plaintiffs' inability to recall facts surrounding the Republic Bank debt in Bankruptcy Court does not establish any intention to hide this FDCPA action from the Bankruptcy Court.  The debt and the Fair Debt Collection Practices Act claims for its collection are two different things.

Plaintiffs are thus not estopped from asserting FDCPA claims against Everest despite the late supplementation of their bankruptcy schedules.  Defendant Everest's Motion for Summary Judgment (Docket No. 15) on judicial estoppel grounds is denied.

Next, this Court considers Jena McKinley's standing to assert FDCPA claims although she is not a debtor who had her debt collected by Everest, as conceded by Plaintiffs (e.g., Docket No. 20, Pls. Memo. at 9, "Non-debtors like Jena").

4.   Jena's Standing

Next, Everest argues that Jena did not owe a debt and Everest did not attempt to collect from her, concluding that she lacks standing under the FDCPA (Docket No. 15, Def. Memo. at 10-12).  Although Plaintiffs claim Jena suffered from invasion of her privacy, embarrassment, and prying inquiries into her family finances following Everest calls to Lois McKinley, Everest denies that they stated that she suffered injurious exposure to debt collection efforts (id. at 11-12).

Plaintiffs have not alleged that Jena stands in the shoes of John the consumer, see Cunningham, supra, 2018 WL 4620391, at *5 (see id. at 12).  The FDCPA, 15 U.S.C.

§ 1692c(4), does define a consumer to include the spouse for purposes of communication in connection with debt collection, while the general definitional section for the Act, id. § 1692a, merely defines a "consumer" to be a natural person obliged or allegedly obliged to pay a debt, id. § 1692a(3).   Everest appears to rest on this narrower definition from § 1692a to deny Jena standing as the consumer owing the debt.

The remaining possible ground for Jena's standing (as alleged, Docket No. 20, Pls. Memo. at 9-10) is Jena suffering from injurious exposure to Everest's collection efforts against John, see Cunningham, supra, 2018 WL 4620391, at *5 (standing under § 1692e).   The Second Circuit has not defined what is "injurious exposure" to debt collection, Schwartz v. Resurgent Capital Servs., LP, No. 08 CV 2533 (NG) (RML), 2009 WL 3756600, at *4 (E.D.N.Y. Nov. 9, 2009); Cunningham, supra, 2018 WL 4620391, at *5.

### a.      Parties' Contention

Plaintiffs argue that Defendant injured Jena because of Everest's two calls to Lois McKinley, which Jena claims invaded her privacy, embarrassed her, and led to uncomfortable and prying questions from Lois (id. at 10).   They claim that Everest calls caused intra-family issues and injury to Jena, a foreseeable harm (id. at 11).

### b.      Analysis—FDCPA Standing

Each alleged provision of the FDCPA must be analyzed individually to determine if Jena has standing or suffered injurious exposure under a particular provision of the FDCPA, Todd v. Collecto, Inc., 731 F.3d 734, 737 (7th Cir. 2013).   Each provision presents a different scope of applicability thus different standards for standing, see Montgomery v.

Huntington Bank, 346 F.3d 693, 696-97 (6th Cir. 2003) (explaining that a non-consumer has standing under § 1692d but not under § 1692c).

Section 1692b(1) regulates the debt collector's communication with third parties in requesting the consumer's location.  On its face, this section raises claims for the third-party contacted by the debt collector for the nuisance of being contacted and the consumer for having his or her privacy violated.  Jena here, however, was not the third-party asked about her husband's location during the two calls to Lois McKinley.  When Jena followed up and called Everest after the two calls, Everest asked her to confirm John's location.  Plaintiffs do not allege that her later call to Everest and its inquiry violated § 1692b(1).  Plaintiffs thus lack standing under § 1692b.

The other provisions of FDCPA cited by Plaintiffs are not limited to John, the consumer.  Section 1692d prohibits a debt collector engaging in harassing, oppressive, or abusive conduct against "any person," 15 U.S.C. § 1692d; see Todd, supra, 731 F.3d at 737; Bank, supra, 2009 WL 1606420, at *5, including Jena.  Therefore, she has standing under § 1692d, provided Plaintiffs establish that Everest engaged in harassing, oppressive, or abusive conduct toward Jena.

Proving that Everest engaged in such conduct is the merits of Jena's claim under § 1692d.  Plaintiffs allege indirect contact between Everest and Jena through the chain of events starting with Everest's two calls to Lois McKinley and Lois' subsequent call to Jena reporting those calls and asking about those calls.  Any harassment or annoyance arose from the intervening action of Lois not only in relaying the calls from Everest but then inquiring about the underlying debt.  Section 1692d enjoins the debt collector from engaging in harassing conduct but not the gratuitous actions of third parties.  Plaintiffs do

not claim that Everest induced Lois McKinley to ask Jena about the debt or Everest's calls or even for Lois to call Jena about the Everest communication.  Although Jena may have standing to assert a claim under § 1692d, she fails to assert such a claim here.

Sections 1692e and 1692f prohibitions against false or misleading representations or unfair practices are general bars on debt collectors and do not merely protect the consumer, cf. 15 U.S.C. § 1692e.  Without limitation, § 1692e lists examples of false or misleading representations that violate the Act, e.g., 15 U.S.C. § 1692e(10), all without stating to whom these representations are directed.  There is no limitation that the representations be made only to the consumer.  Similarly, § 1692f gives categories of unfair practices that are examples of prohibited conduct under the Act.  This section also does not restrict its application solely to a collector's activities with the consumer, see Todd, supra, 731 F.3d at 736.

Allegations of violation of § 1692e or § 1692f each state an injury-in-fact to a third-party for minimal constitutional standing purposes, Cohen, supra, 897 F.3d at 81 (§ 1692e); Grosz v. LSF9 Master Participant Trust, No. 16-CV-4035, 2017 WL 683912, at *9 (E.D.N.Y. Aug. 7, 2017) (§ 1692f, citing cases).

Plaintiffs also need to establish Jena suffered injurious exposure under any of the cited sections of the Act to have statutory standing.  In Schwartz v. Resurgent Capital, plaintiff Yitzchok Schwartz read a supposedly misleading collector's letter addressed to the customer and not to Schwartz, 2009 WL 3756600, at *1.  The court held that Schwartz could not be misled by the letter because the letter was not addressed to him.  Id. *3-4.  Schwartz conceded that he experienced no actual damages or other injury from reading that letter.  Therefore, the court concluded that Schwartz did not suffer "injurious

22

exposure" from the dunning letter and lacked standing to sue under § 1692e despite the lack of any limiting reference to the consumer.  Id.

As reading a consumer's collection letter by happenstance does not create statutory standing under § 1692e for the reader, Schwartz, supra, 2009 WL 3756600, at *4, receiving word from a third-party that a debt collector asked about the consumer does not create injurious exposure for the person learning about that communication (here Jena).  Statutory standing does not exist here because FDCPA liability is enforced by 15 U.S.C. § 1692k, which creates the private right of action against debt collectors who "fail to comply with  . . . this title with respect to any person is liable to such persons," 15 U.S.C. § 1692k (emphasis added); Schwartz, supra, 2009 WL 3756600, at *4.  "Any person" liable under § 1692k has been defined by the Second Circuit to include the consumer and those others injuriously exposed to a collection practice, Schwartz, supra, 2009 WL 3756600, at *4, citing Sibersky v. Goldstein , 155 F. App'x 10, at *11 (2d Cir. Sept. 21, 2005) (summary Order)).

Plaintiffs' case here is like a third-party reading a debtor's mail.  Here, there were two calls to the consumer's mother that she mentioned to the consumer's spouse, leading to anxiety for that spouse.  As in Schwartz, Jena's alleged injury of anxiety from learning of Lois's conversations with Everest fails to satisfy the requirements for statutory standing. Jena's distress arose from talking with Lois and not from Everest's actions, 2009 WL 3756600, at *4.  Plaintiffs do not establish actual damages from Jena learning of Everest's contact of Lois McKinley or that Jena suffered damages or economic or other loss from that contact.

Under <u>Buchholz v. Meyer Njus Tanick, PA</u>, 946 F.3d 855, 859-60 (6th Cir. 2020), mere mention of Everest's two calls with Lois McKinley did not cause Jena sufficient harm to give Jena standing.  In that case, Gustav Buchholz alleged defendant firm sent him two letters advising him of his debt that made him anxious.   The Sixth Circuit held that Buchholz failed to show any injury traceable to the letters, hence lacking standing to sue under the Act, asserting that "not all disputes have a home in federal court," <u>id.</u> at 859, 861-70, 860.  The court concluded that "it is far from clear that a bare allegation of anxiety is a concrete injury," <u>id.</u> at 863.

Jena here has not demonstrated that collector's actions injured her.   Plaintiffs make the bare allegation of anxiety arising from Everest's calls to Lois McKinley, claiming that she was embarrassed and frustrated by Everest's calls and their aftermath.   Jena only established that Lois's follow up discussion about the underlying debt led to Jena's alleged distress.

Frustration, embarrassment, and responding to an in-law's queries do not state injurious exposure to Everest's debt collection efforts.  These came from the intervening events of Lois calling Jena and Lois' follow up inquiries.   Plaintiffs are incorrect in presuming Everest could have foreseen the alleged chain of events leading to Jena's claim.  Everest could not have known if Lois would relay its calls to John or Jena.  Everest did not ask Lois to convey any message to John (or his wife).  Lois could have chosen not to mention the calls; in fact, she did not mention the May 28th call to Plaintiffs.  Plaintiffs claim Lois McKinley asked Jena uncomfortable and prying questions.  Lois McKinley thus is an intervening actor to Everest's alleged collection activities that renders Everest no longer responsible under the FDCPA.

24

While Jena may have minimal constitutional standing to assert claims under 15 U.S.C. §§ 1692d, 1692e, and 1692f, she fails to establish statutory standing under these sections of the Act by not having suffered injurious exposure to Everest's collection activities.  She also lacks standing under § 1692b because Jena was not contacted directly by Everest.

### 5.  Conclusions

Therefore, so much of Defendant Everest's Motion for Summary Judgment (Docket No. 15) dismissing Jena's claims is granted and Plaintiffs' Motion for Summary Judgment (Docket No. 16) for judgment for Jena is denied.

This Court next considers the merits of John McKinley's FDCPA claims as asserted in Plaintiffs' Summary Judgment Motion (Docket No. 16).

### C.  Plaintiffs' Motion (Docket No. 16) for Violation of the Fair Debt Collection Practices Act

#### 1.  Applicable Standards—Fair Debt Collection Practices Act

The purpose of the FDCPA is to avoid the "abusive, deceptive, and unfair debt collection practices by many debt collectors," 15 U.S.C. § 1692(a); see, e.g., Macris v. Specialized Loan Servicing, LLC, No. 17CV361, 2021 WL 3052007, at *8 (W.D.N.Y. July 20, 2021) (Skretny, J.).   "Congress enacted the FDCPA 'to protect against the abusive debt collection practices likely to disrupt a debtor's life.'  Simmons v. Roundup Funding, LLC, 622 F.3d 93, 96 (2d Cir. 2010) (internal quotation marks omitted)," Cohen, supra, 897 F.3d at 81.   The FDCPA is remedial in nature, thus it is to be construed liberally, Vincent v. The Money Store, 736 F.3d 88, 98 (2d Cir. 2013) (quotation omitted); Macris, supra, 2021 WL 3052007, at *8.

"Except as provided in section 1692b of this title, without prior consent of the consumer given directly to the debt collector, or the express permission

25

of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector,"

15 U.S.C. § 1692c(b).   "Consumer" is defined in § 1692c to include the consumer's spouse, id. § 1692c(d).

To assert claims under FDCPA, a litigant must be the consumer who allegedly owed a debt, that the Defendant collecting that debt is considered a "debt collector," and that Defendant engaged in an act or omission in violation of the Act, Macris, supra, 2021 WL 3052007, at *8; see Schuh v. Druckman & Ginel, L.L.P., 751 F. Supp.2d 542, 548 (S.D.N.Y. 2010).

Plaintiffs cite five provisions under the Act that they allege Everest violated by calling Lois McKinley twice (Docket No. 1, Compl. ¶¶ 23-27, citing 15 U.S.C. §§ 1692b(1), 1692d, 1692e, 1692e(10), 1692f)).

### a.    Section 1692b

Section 1692b(1) requires a debt collector communicating with a third-party for the purpose of acquiring location information about the consumer to "identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer."   The collector must not state that the consumer owes any debt, id. § 1692b(2), and may not communicate with that third person more than once "unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information," id. § 1692b(3).

### b.   Section 1692d

Section 1692d is violated when a debt collector engages "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," 11 U.S.C. § 1692d; Macris, supra, 2021 WL 3052007, at *8. An example of harassing conduct is a collector "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number," or placing calls "without meaningful disclosure of the caller's identity," 15 U.S.C. § 1692d(5), (6).

### c.   Section 1692e

Section 1692e "is violated when a debt collector uses 'any false, deceptive, or misleading representation or means in connection with the collection of any debt,'" Pipiles v. Credit Bureau of Lockport, 886 F.2d 22, 24 (2d Cir. 1989); Macris, supra, 2021 WL 3052007, at *8.   Section 1692e lists false or misleading representations that violate FDCPA, such as the use of false representation or deceptive means to collect any debt, 15 U.S.C. § 1692e(10).

### d.  Section 1692f

Section 1692f bars a debt collector from using unfair or unconscionable means to collect or attempt to collect a debt, 15 U.S.C. § 1692f.  This provision then lists a series of actions that are unfair practices, such as collection of any amount unless it is expressly authorized by agreement creating the debt or permitted by law, id. § 1692f(1); see Macris, supra, 2021 WL 3052007, at *8, communicating with a consumer regarding a debt by a post card, 15 U.S.C. § 1692f(7), causing the debtor to incur communication charges in collection of the debt, id. § 1692f(5), or compelling payment by postdated check, id.

§ 1692f(2), (3), (4).  Section 1692f is a catch-all provision, "to catch conduct not otherwise covered by the FDCPA," <u>Okyere v. Palisades Collection, LLC</u>, 961 F. Supp.2d 522, 531 (S.D.N.Y. 2013), because Congress was aware it could not anticipate every improper collection practice, <u>id.</u> at 530; <u>Johnson v. BAC Home Loans Servicing, LP</u>, 867 F. Supp.2d 766, 781-82 (E.D.N.C. 2011) (citing legislative history), <u>reconsideration denied</u>, 2012 WL 148688 (E.D.N.C. Jan. 18, 2012) (Docket No. 15, Def. Memo. at 18).  This section provides a cause of action only if collector's conduct is not covered by other provisions of the Act, <u>Foti v. NCO Fin. Sys., Inc.</u>, 424 F. Supp.2d 643, 667 (S.D.N.Y. 2006) (Docket No. 22, Def. Reply Memo. at 10).  In enacting this section

> "The legislative history of the FDCPA abounds with illustrations of the kinds of abuse that the Act was meant to eliminate, 'such as use of "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process."' <u>Kropelnicki v. Siegel</u>, 290 F.3d 118, 127 (2d Cir.2002) (quoting S. Rep. No. 95–382, at 2 (1977), <u>reprinted in</u> 1977 U.S.C.C.A.N. 1695, 1699)."

<u>Sutton v. Financial Recovery Servs., Inc.</u>, 121 F. Supp.3d 309, 312 (E.D.N.Y. 2015).

## 2.  Parties' Contentions

Plaintiffs argue that Everest violated § 1692c(b) of the FDCPA by leaving messages with Lois McKinley about John's debt (Docket No. 16, Pls. Memo. at 5-8; Docket No. 20, Pls. Memo. at 12-14), by calling Lois more than once (Docket No. 16, Pls. Memo. at 4-10; Docket No. 20, Pls. Memo. at 15-17), and by calling her to learn John's address despite already knowing that information (Docket No. 16, Pls. Memo. at 9-10; Docket No. 20, Pls. Memo. at 17-18).  They also contend that the repeated calls to Lois violated §§ 1692d, 1692e, and 1692f as harassing, deceptive, or unfair conduct (Docket

No. 20, Pls. Memo. at 18-20).  Finally, they argue for statutory damages and recovery of their costs (Docket No. 16, Pls. Memo. at 10-11).

In opposition, Everest repeats its arguments urging judicial estoppel to preclude these undisclosed claims (Docket No. 19, Def. Memo. at 4-6), denying that Jena had standing (id. at 6-7), and denying Plaintiffs stated claims under FDCPA (id. at 7-15; Docket No. 20, Pls. Memo.).

On whether Plaintiffs stated FDCPA claims, Everest contends that if Plaintiffs state a distinct claim under § 1692b (cf. Docket No. 15, Def. Memo. at 12-13), Everest complied with that provision in calling Lois McKinley merely to confirm John's address (id. at 13-15).  Next, Everest denies that it violated § 1692d by committing the activities forbidden by collectors under that statute (id. at 15-16).  Everest also denies violation of §§ 1692e, 1692e(10) since it merely called Lois McKinley to confirm John's address and did not engage in false representation or deceptive means to collect a debt (id. at 16-18).  Everest argues that there is no allegation under § 1692f for other improper practices (id. at 18-19).

Everest later replies that Plaintiffs failed to allege a claim under § 1692c in their Complaint and now cannot allege such a claim in their memorandum (Docket No. 22, Def. Reply Memo. at 5-6).  Since these claims were not alleged in the Complaint, Everest concludes that they are untimely (id. at 5-6, 7).  Alternatively, Everest denies violating § 1692c(b) as a matter of law because it never attempted to leave a message for Plaintiffs with Lois McKinley (id. at 7).  As for claims under § 1692b(3), Everest asserts that the two calls to Lois were reasonable (see Docket No. 22, Def. Reply Memo. at 8-9).  Everest

again denies violating §§ 1692d, 1692e, or 1692f because its alleged conduct did not fall under any of these acts (id. at 10).

Plaintiffs reply repeating their contentions that Everest violated provisions of the FDCPA (Docket No. 21, Pls. Reply Memo.).   Specifically, Plaintiffs argue that during Leeanne's first call to Lois McKinley Everest attempted to leave a message with Lois by Leeanne asking "you don't speak with him at all?" (e.g., id. at 1, 2-4).

On the absence of § 1692c in the Complaint, Plaintiffs now claim that Everest understood all their claims came from its two calls to Lois McKinley, as acknowledged by Everest, hence their claims under § 1692c (id. at 7).  Since Everest understood Plaintiffs' theories, their claims under §§ 1692c and 1692b(3) should not be rejected on timeliness grounds (id. at 8).   If necessary, they urge this Court grant them leave to amend the Complaint to affirmatively allege these sections (id. at 9).

This Court will first consider the timeliness of Plaintiffs' claims under § 1692c and then the merits of claims under the other provisions of the FDCPA.

### 3.  15 U.S.C. §§ 1692c(b), 1692b(3) Timeliness

Plaintiffs argue that Everest understood what they claimed despite not invoking a claim under § 1692c. Their belief of what Everest understood they alleged (cf. Docket No. 21, Pls. Reply Memo. at 7), however, is not pleading and does not provide adequate notice to Everest of Plaintiffs' claims against it.  The Complaint does allege that Everest's acts and omissions "constitute[d] numerous and multiple violations of the FDCPA, including every one of the above-cited provisions" (Docket No. 1, Compl. ¶ 28), without explicit inclusion or reference to § 1692c.

While alleging Everest contacting Lois McKinley on June 18, 2019 (Docket No. 1, Compl. ¶¶ 12-18), the Complaint only alleged violation of § 1692b(1) for seeking more than location information from her (Docket No. 1, Compl. ¶ 23; Docket No. 22, Def. Reply Memo. at 6).  First, Plaintiffs only alleged that one call (in fact conducted on June 24, 2019, as now claimed in the parties' Statements of Fact) in the Complaint and not the May 28, 2019, call (Docket No. 1, Compl. ¶¶ 12-18; see Docket No. 15, Def. Statement ¶ 19; Docket No. 20, Pls. Responding Statement ¶ 19 (undisputed); Docket No. 16, Pls. Statement ¶ 2).  The record in these Motions for Summary Judgment revealed the earlier call.

Next, Plaintiffs also fail to assert that the two calls to Lois McKinley violated § 1692c as they now attempt to allege in their motion.  A Summary Judgment Motion is not the vehicle to raise claims for the first time, Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998) (Docket No. 22, Def. Reply Memo. at 6); see Anderson v. Aset Corp., 329 F. Supp.2d 380, 383 (W.D.N.Y. 2004) (Larimer, J.) ("the complaint says what it says, and a memorandum of law is not a proper vehicle for rewriting or amending the complaint," citing cases); Ribis v. Mike Barnard Chevrolet-Cadillac, Inc., 468 F. Supp.2d 489, 495 (W.D.N.Y. 2007) (Larimer, J.) (citing cases).

Further, these two sections of the FDCPA are distinct.  Section 1692c precludes collector contact of third parties about the debt but it expressly excludes conduct allowed under § 1692b, contacting a third-party to confirm a customer's location, 15 U.S.C. § 1692c(b).  Section 1692b dictates the manner of permitted third-party inquiry by a collector.  As noted by the Eastern District of New York in Morant v. Miracle Financial, Inc., No. 11-cv-4140, 2012 WL 4174893, at *3 (E.D.N.Y. Sept. 17, 2012), noncompliance

with § 1692b is a violation of § 1692c (quoting <u>Thomas v. Consumer Adjustment Co.</u>, 579 F. Supp.2d 1290, 1297 (E.D. Mo. 2008)), but the reverse is not true.  A violation of § 1692c is not a violation of § 1692b.

Here, Plaintiffs allege only violation of the manner of Everest's inquiry to third-party, Lois McKinley, under § 1692b.  Now raising the threshold issue whether Everest could contact Lois under § 1692c is untimely.

Plaintiffs' Motion for Summary Judgment (Docket No. 16) for judgment for John's claims under § 1692c(b) is denied and Everest's Motion for Summary Judgment (Docket No. 15) dismissing such claims is granted.

### 4.   Leave to Amend the Complaint

Plaintiffs alternatively seek leave to amend their Complaint to expressly allege violation of § 1692c (Docket No. 21, Pls. Reply Memo. at 8).

A Summary Judgment memorandum is not the proper vehicle to amend a pleading to assert a new claim, <u>see, e.g.</u>, <u>Ribis</u>, <u>supra</u>, 468 F. Supp.2d at 495 (Docket No. 22, Def. Reply Memo. at 6).

One court, however, has held that § 1692b was not an independent violation of the FDCPA but was subsumed in § 1692c(b) and thus deemed that plaintiff's allegations as if they were alleged as § 1692c(b) violations, <u>Morant</u>, <u>supra</u>, 2012 WL 4174893, at *3. Everest cites this case (Docket No. 15, Def. Memo. at 12-13) but without acknowledging the conversion of the sections in that claim.

Plaintiffs' arguments (Docket No. 16, Pls. Memo. at 5-8; Docket No. 20, Pls. Memo. at 12-18; Docket No. 21, Pls. Reply Memo. at 1-7) here are replete with references to

§ 1692c as if they originally asserted that statute in the Complaint.  This Court declines to deem Plaintiffs' § 1692b(1) allegations to be §1692c claims.

Under the Case Management Order of Magistrate Judge Schroeder, motions to amend the Complaint were due by February 7, 2020 (Docket No. 10), and Plaintiffs have not so moved, save now arguing in reply for that leave (cf. Docket No. 21, Pls. Reply at 8-9).

Amendment of pleadings under Federal Rule of Civil Procedure 15(a) after the time to do so as of right requires either consent of all parties (apparently not sought or present here) or by leave of the Court.  Under Rule 15(a), motions for leave to amend the Complaint are to be freely given when justice requires.  Granting such leave is within the sound discretion of the Court.  Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971).  "In the absence of any apparent or declared reason– such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be 'freely given.'"  Foman, supra, 371 U.S. at 182 (quoting Fed. R. Civ. P. 15(a)).  Furthermore, under this Court's Local Civil Rule 15, the movants seeking to amend "must attach an unsigned copy of the proposed amended pleading as an exhibit to the motion," W.D.N.Y. Loc. Civ. R. 15(a); see also id. R. 15(b) (amendment identified as "redline" version of original indicating the changes).

Unlike the Eastern District of New York in Morant, this Court declines to grant leave to amend or to construe Plaintiffs' § 1692b allegations into claims under § 1692c.  First,

Plaintiff Margaret Morant filed a separate Motion for leave to amend, 2012 WL 4174893, at *1.  The McKinleys' reply papers did not contain their proposed Amended Complaint; thus, it is unclear what they intend to allege under § 1692c.  One could speculate that they intend to allege their motion contentions in an amendment but that has not been established.  As stated above, § 1692b and § 1692c are distinct.  This Court can only presume what Plaintiffs intend to amend stating claims under § 1692c.  Absent the proposed Amended Complaint, leave to amend is denied.

Moreover, an amendment to add violation of § 1692c (or restate their § 1692b claims as § 1692c claims) would be futile, see Morant, supra, 2012 WL 4174893, at *3-4 (denying leave to amend complaint).  A debt collector like Everest may contact third parties (such as Lois McKinley) to confirm or correct a customer's address.  Section 1692b carves out an exception from § 1692c (acknowledged in that statute) for debt collector contact with third parties where the collector is confirming the consumer's location or reasonably believes that the third-party's earlier answer to that query was erroneous or incomplete.

The record here contains the contents of the two calls Plaintiffs could use to support their proposed § 1692c claim (e.g., Docket No. 16, Pls. Statement ¶¶ 3, 4; Docket No. 16, Pls. Atty. Decl. ¶¶ 6, 7, Exs. D, E).  These calls fall under the exception within § 1692c if the calls complied with § 1692b.  In both of Everest's calls to Lois McKinley, its representatives identified themselves and stated they were trying to confirm John's address.  Lois did not ask them to identify their employer, Everest.  The terms of § 1692b(1) thus were met.  Everest's representatives also did not state that John or Jena owed any debt, complying with § 1692b(2).  Although Leeanne in the first call suggested

that she was not sure Lois' number was the correct one to leave a message, Lois McKinley refused to take a message and Leeanne did not leave a message for John (or Jena) (Docket No. 16, Pls. Statement ¶ 3, Docket No. 16, Pls. Atty. Decl. ¶ 6, Ex. D). Therefore, both calls fall under the § 1692b exception from § 1692c(b)'s bar on debt collector contact of persons other than the customer.  An amendment to state (or restate) Plaintiffs' claims as violations of § 1692c(b) when the offensive conduct is allowed under § 1692b would be futile.  Leave to amend is denied.

### 5.  15 U.S.C. § 1692b

Plaintiffs' failure to allege violation of § 1692c has a consequence for their alleged claim under § 1692b(1).  Everest argues that violation of § 1692b(1) is subsumed in § 1692c(b) (Docket No. 15, Def. Memo. at 12-13; Docket No. 22, Def. Reply Memo. at 6), Morant, supra, 2012 WL 4174893, at *3; Thomas, supra, 579 F. Supp. 2d at 1297.

As discussed above regarding Jena's standing and amending the Complaint, review of the two telephone calls to Lois McKinley shows that the calls did not violate § 1692b.  These calls were made with the sole purpose of confirming John's address.  A debt collector may make such confirmation even if it has the consumer's current location to ensure that the address remains current and correct.  Everest's representatives did not reveal the call was for collection of a debt and were not asked who employed them.  When Lois McKinley denied knowing John's location Everest's representatives terminated the calls.  Although Lois did not request further calls from Everest, it called her a second time believing that Lois' first answer was incomplete.

There is no evidence in this record that Everest had a confirmed address for John before calling Lois (or before Jena called Everest), differing from Rivera v. Financial Asset

Management Systems, Inc., No. 17-cv-1295, 2020 WL 5791175, at *6 (E.D.N.Y. Sept. 25, 2020) (Docket No. 20, Pls. Memo. at 17), where that court granted summary judgment to plaintiff Diandra Rivera because the defendant collector already confirmed Rivera's telephone number before contacting a third-party.

In Shand-Pistilli v. Professional Account Services, Inc., No. 10-cv-1808, 2010 WL 2978029 (E.D. Pa. July 26, 2010), defendant collector called and wrote to plaintiff Beverly Shand-Pistilli to collect a debt, then informed her that defendant had contacted her employer to "verify" her employment, id. at *1. Plaintiffs cite (Docket No. 20, Pls. Memo. at 17) this case for the proposition that once a collector acquires location information it may not contact third parties for information it already possesses, id. at *4. In that case, however, the call was to the employer to confirm employment and not location, id.

Plaintiffs have not established Everest pretended to learn from Lois McKinley already confirmed information. Plaintiffs have not shown prior confirmation by Everest of John's address. Plaintiffs' reference to John's address being confirmed in Everest's records (Docket No. 20, Pl. Memo. at 5) referred to a screenshot of Everest's account notes for John's debt (Docket No. 15, Maczka Decl. ¶ 5, Ex. A). According to that exhibit of this screenshot, the report references the May 28 and June 24, 2019, calls to Lois McKinley and to the June 24, 2019, call to Jena which confirmed John's address as Jena admitted that she was John's wife and that she would pass along Everest's message (id., Ex. A; see also Docket No. 22, Maczka Decl. ¶¶ 5, 6, Ex. A (recording of June 24, 2019, call with Jena); Docket No. 16, Pls. Atty. Decl. ¶ 4, Ex. B (screenshot of John's account report, same as Docket No. 15, Maczka Ex. A); Docket No. 16, Jena McKinley Decl. ¶ 6;

Docket No. 16, Pls. Statement ¶ 6).   That record does not reveal the date Everest confirmed that location earlier than Jena's June 24, 2019, call.

Although Plaintiffs lived at their address from 2008 (Docket No. 16, Pls. Statement ¶ 9), a reasonable jury could not find that Everest had confirmed knowledge of Plaintiffs' location before May 2019.

Therefore, Everest's Motion for Summary Judgment (Docket No. 15) under 15 U.S.C. § 1692b is granted and Plaintiffs' counter Motion for Summary Judgment (Docket No. 16) on this issue is denied.

### 6. 15 U.S.C. § 1692b(3)

According to the agreed facts, Everest called Lois McKinley twice (although the Complaint only alleges one of the two calls).   As for Everest's second call to Lois, Everest reasonably believed Lois' first answer about John's location was incorrect or incomplete and thus Everest could reasonably believe that she had correct location information when it called her again, 15 U.S.C. § 1692b(3).

This Court finds that a reasonable jury would not conclude that these calls violated the FDCPA because they merely sought confirmation of John's location and did not ask anything more from Lois McKinley.   Defendant Everest's Motion (Docket No. 15) is granted, and Plaintiffs' Motion (Docket No. 16) is denied for this claim.

### 7. 15 U.S.C. §§ 1692d, 1692e, 1692f

Everest denies violating these sections of the Act (Docket No. 22, Def. Reply Memo. at 9-10).   These sections prohibit abusive, false, deceptive, misleading, or unfair actions by a debt collector.   Plaintiffs contend Everest performed false, misleading, or unfair actions from its repeated call to Lois McKinley.

First, the Complaint alleged only one call (Docket No. 1, Compl. ¶ 12).  A single call confirming the location of a consumer is not false, deceptive, abusive, or misleading, see also Cavanaugh v. Pioneer Credit Recovery, Inc., No. 19cv1473, 2020 WL 300511, at *1 (W.D.N.Y. June 4, 2020) (Crawford, J.) (alleged plaintiff did not violate § 1692d(6) for alleging only one call).  A second call made about a month later also is not abusive or deceptive, see Beeders v. Gulf Coast Collection Bureau, 796 F. Supp.2d 1335, 1338 (M.D. Fla. 2011) (one call per day every two days held not to be annoying or abusive under § 1692d), aff'd, 432 F. App'x 918 (11th Cir. 2011) (per curiam).

Next, as stated above for the § 1692b claims, Everest did not mislead or deceive Lois McKinley by calling her to confirm her son's location even if Everest knew that location to assert a claim under § 1692e.  It is definitional that confirmation presumes prior knowledge that the call merely would substantiate.  Again, the record is devoid of evidence of Everest possessed confirmed knowledge of John's location before calling Lois McKinley.

As for § 1692f, Plaintiffs argue that the catch-all unfair or unconscionable conduct provisions cover Everest's activities (Docket No. 20, Pls. Memo. at 19-20).  But Plaintiffs fail to state how two calls to a consumer's mother were unfair or unconscionable.  The statutory examples in § 1692f of unfair practices involve collection techniques (the amount collected, the method of payment, imposing communication charges for debt collection, or public disclosure of the collection, see 15 U.S.C. § 1692f(1)-(8)) that are not alleged here.  The complaint here is two calls to the consumer's mother, see also Perez v. Global Credit and Collection, Corp., No. 14 Civ. 9413(CM), 2015 WL 4557064, at *3 (S.D.N.Y. July 27, 2015) (8 digits in letter exposed in envelope held not violative of § 1692f).

38

Plaintiffs did not object to the time of day of these calls or accuse Everest of using abusive language with Lois.

Plaintiffs now argue, aside from their other allegations, that this Court "should hold that Defendant's calls to Lois were unfair and unconscionable in violation of section 1692f" (Docket No. 20, Pls. Memo. at 19-20) without articulating how these two calls were unfair or unconscionable.  These calls are not akin to the unfair practices listed among the examples in § 1692f.  Plaintiffs do not allege different or unconscionable conduct aside from the two calls required for claim under this section, see Proctor v. PMR Law Grp., No. 09CV1028, 2010 WL 4174723, at *3 (W.D.N.Y. Oct. 25, 2010) (Skretny, C.J.); Bennett v. Asset Recovery Solutions, LLC, No. 14CV4433, 2017 WL 432892, at *5 (E.D.N.Y. Jan. 5, 2017) (calls to plaintiff's employer, alleged as violations of §§ 1692c(a)(3) and 1692d(5), fail to state unfair practice under § 1692f).  Plaintiffs fail to allege specific conduct aside from these calls to allege a § 1692f claim, see Proctor, supra, 2010 WL 4174723, at *3.

Therefore, Defendant Everest's Motion for Summary Judgment (Docket No. 15) dismissing these remaining FDCPA claims is granted, and Plaintiffs' Motion for Summary Judgment (Docket No. 16) is denied.

## IV.    Conclusion

First, Plaintiffs are not estopped by their initial failure to list this action in their Minnesota bankruptcy (later cured by amending their bankruptcy schedules).  Thus, so much of Defendant Everest Receivable Services' Motion for Summary Judgment (Docket No. 15) dismissing their claims on this ground is denied.

Plaintiffs' belated request (Docket No. 21, Pls. Reply Memo. at 8) of leave to amend the Complaint to add claims under 15 U.S.C. § 1692c(b) also is denied.  Such an amendment would be futile.

Next, this Court holds that Jena McKinley lacks standing to assert her Fair Debt Collection Practices Act claims because she was not the debtor, was not directly contacted by Everest, and did not establish injurious exposure to Everest's calls to Lois McKinley.

As for John McKinley's FDCPA claims, the two calls to his mother were legitimate requests to confirm his current location.  The calls concluded after Lois McKinley denied knowing where John was.  Everest did no further follow up or request Lois contact Plaintiffs or otherwise engage her in any of its collection efforts.  Plaintiffs fail to establish any violation of the cited FDCPA provisions, 15 U.S.C. §§ 1692b, 1692d, 1692e, 1692f.  Thus, their FDCPA claims are dismissed; Defendant's Motion for Summary Judgment (Docket No. 15) is granted as indicated, while the Motion for Summary Judgment for Plaintiffs (Docket No. 16) is denied.

## V.    Orders

IT HEREBY IS ORDERED, that Defendant Everest's Motion for Summary Judgment (Docket No. 15) is GRANTED.

FURTHER, Plaintiffs' Motion for Summary Judgment (Docket No. 16) is DENIED.

FURTHER, Plaintiffs' Motion for leave to Amend the Complaint (Docket No. 21) is DENIED.

FURTHER, the Clerk of Court is directed to close this case.

SO ORDERED.

Dated:        February 14, 2022
              Buffalo, New York

                                        s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                    United States District Judge